UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

Plaintiff,

v.

GREGORY P. COHAN,

Defendant.

3:11 - CV- 412 (CSH)

**RULING ON DEFENDANT'S MOTION FOR LEAVE TO FILE A CROSS MOTION FOR SUMMARY JUDGMENT**

**HAIGHT, Senior District Judge:**

## I. INTRODUCTION

The United States commenced this action against *pro se* defendant Gregory P. Cohan for default on a consolidation loan serviced by the United States Department of Education. The United States (also "plaintiff" or the "Government") filed a summary judgment motion on August 17, 2011 and Cohan now moves for leave to file a cross motion for summary judgment.[1] Doc. #17 & #33. The Government objects to Cohan's motion for leave to file, arguing that his prospective summary judgment motion would be untimely and prejudicial in that it would be filed more than seven months after the filing of the Complaint, in violation of this Court's Standing Order on scheduling in civil actions. Doc. #37, p. 1-2. *See* D. Conn. *Standing Order on Scheduling in Civil Cases*, ¶2(e) ("Unless otherwise ordered, all motions for summary judgment shall be filed within 7 months after

[1] Despite the fact that he is representing himself, defendant is an attorney admitted to the Bar of this District. Doc. #10 (Notice of Appearance, filed 6/13/2011, providing "Federal Bar Number: ct26933").

the filing of the complaint, the filing of a petition for removal, or the transfer of an action from another District.").[2] For the reasons set forth below, the Court shall grant defendant's motion for leave to file a cross summary judgment motion.

## II. DISCUSSION

### A. Amendment of Scheduling Order - Rule 16(b)(4)

A district court generally addresses a party's motion for leave to file an untimely pleading as a motion to amend the scheduling order. Pursuant to Federal Rule of Civil Procedure 16(b), "[a] [case] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Courts examine the particular circumstances in the case and the factual justifications provided by the movant to determine whether "good cause" exists to amend the schedule.

In particular, whether "good cause" exists turns primarily on the "diligence" of the moving party in seeking to meet the deadline in the scheduling order. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir.2007) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir.2000)). The "court may modify a scheduling order if it determines that "the deadline cannot reasonably be met despite the diligence of the party seeking the extension." *In re Adelphia Communications Corp.,* 452 B.R. 484, 491-92 (Bankr. S.D.N.Y. 2011) (quoting *Parker* , 204 F.3d at 340).

"Examples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline."

[2] In the present action, due to the nature of the case ("an action by the United States to collect on a student loan guaranteed by the United States," Fed. R. Civ. P. 26(a)(1)(B)(vii)), the parties are exempt from filing a Rule 26(f) Report. The parties are, however, expected to comply with this District's Standing Order on Scheduling in Civil Actions.

*Fuller v. Interview, Inc.*, No. 07 Civ. 5728 (RJS)(DF), 2011 WL 724533, at *3 (Bankr. S.D.N.Y. Feb. 25, 2011) (citing *Parker*, 204 F.3d at 340). It thus follows that good cause may be found where the movant learns of the facts supporting amendment after expiration of the relevant filing deadline (*e.g.*, during discovery). *See, e.g., Smith v. Sentry Ins.*, 674 F.Supp. 1459, 1461 (N.D. Ga. 1987) (finding "good cause" for requested late filing of cross summary judgment motion where defendants gained necessary evidence to move for summary judgment only after "awaiting the transcription of depositions of various individual defendants taken by plaintiff toward the end of the discovery period"). *See also Enzymotec Ltd. v. NBTY, Inc.*, 754 F.Supp.2d 527, 537 (E.D.N.Y. 2010) ("good cause" found to grant plaintiff leave to amend complaint to add breach of contract claim nine months after deadline to amend expired "because delayed discovery and settlement negotiations deferred its ability to discover the facts supporting the proposed cause of action").

Furthermore,"[t]he court may also consider whether the amendment [of the scheduling order under Rule 16(b)(4)] will prejudice the non-moving party." *International Media Films, Inc. v. Lucas Entertainment, Inc.*, No. 07 Civ. 1178(JGK)(FM), 2008 WL 781823, at *2 (S.D.N.Y. Mar. 20, 2008). District courts examine whether their acceptance of a particular untimely cross motion will result in prejudice to the opposing party or "substantially delay the adjudication of the case." *Bowens v. Aftermath Entertainment*, No. Civ.02–40170, 2004 WL 2677166, at *1 (E.D.Mich. Nov. 10, 2004) (granting motion for leave to file cross summary judgment where "the Court [did] not find that Defendants [would] be prejudiced by [resulting] delayed briefing [regarding proposed motion], as this additional filing [would] not substantially delay the adjudication of this case").

The Second Circuit has analyzed prejudice with respect to whether the untimely filing would require the opposing party to make additional expenditures to conduct discovery and to prepare for

trial. In the absence of resulting increased litigation costs to, or reduced likelihood of success by, the opposing party, prejudice has been deemed "minimal." *Brown v. Gen. Nutrition Cos., Inc.*, 356 F. App'x. 482, 487 (2d Cir. 2009) (in case of a party's four-month delay in filing reply papers, "[a]lthough we have found that prejudice to [the opposing party] resulting from unreasonable delay may be presumed, there are no indications that the delay here, for example, increased the litigation costs [the opposing parties] had to bear or reduced (perhaps due to decaying evidence) their likelihood of success on the merits." ) (citing *LeSane v. Hall's Sec. Analyst*, *Inc.*, 239 F.3d 206, 210 (2d Cir. 2001)) (internal quotations omitted).

Furthermore, with respect specifically to motions for leave to file an untimely cross summary judgment motion, courts factor in "judicial efficiency" – *i.e.*, "consider[] the efficiency gained by addressing the summary judgment issues simultaneously to constitute good cause." *Bowens*, 2004 WL 2677166, at *1. *See also Smith.*, 674 F.Supp. at 1461 (granting defendants' motion for leave to file summary judgment motion "out of time" because "[e]ntertaining the proposed summary judgment motion may well simplify matters for trial or dispense with the need for a trial").

**B. <u>Cohan's Pending Motion</u>**

In ruling on Cohan's pending motion, the Court focuses primarily on whether "good cause" exists for the requested amendment to the schedule – *i.e.,* whether with the exercise of diligence Cohan could have filed his requested cross summary judgment motion by the requisite deadline. Cohan now seeks leave to file his proposed motion two months beyond the expiration of the seven-month deadline set forth in this District's Standing Order on scheduling in civil actions. In support of his present motion, he argues that "[a] substantial amount of time was consumed by virtue of [his]

good faith attempt to negotiate settlement" – *i.e.*, "a period of approximately two and a half months." Doc. #33, ¶3(a).

Defendant further contends that thereafter, "[o]n two occasions," plaintiff's counsel induced him to "take no court action and continue to attempt to negotiate settlement." *Id.*, ¶3(b). While defendant was allegedly relying on such inducements, plaintiff's counsel successfully moved for default against him even "after she represented that she would not file a motion for default." *Id.*, ¶3(c). "The defendant remained in default status for a period of approximately five months, from April 12, 2011 through September 6, 2011, in part because the plaintiff requested an extension of time to respond to the defendant's motion to open the default." *Id.*, ¶3(d). After the default was opened, in December 2011, defendant received the Government's objections and responses to his discovery requests, which he claims, in addition to legal research, made it "overwhelmingly apparent . . . that the entry of summary judgment in his favor is fully warranted and completely appropriate int his case." *Id.*, ¶3(h). Cohan thus claims that revelations from the Government's December 2011 discovery responses compel his current request to file a summary judgment motion. In other words, in the exercise of due diligence, he did not have the necessary information to file his cross summary judgment motion within the filing period (*i.e.*, by October 16, 2011).

The Government contests the accuracy of defendant's aforementioned recitation of the dealings between the parties, expressing "disagreement with Cohan's characterization of the procedural history of his case." Doc. #37, p. 2. In support, the Government argues that "it was Cohan's failure to provide requested financial information which led to the default in the first instance." *Id.* (citing Doc. #16, p. 1-3 (in which the Government contended that AUSA Christine Sciarrino's agreement not to seek default against Cohan was expressly contingent on his production

of financial statements, which he failed to provide). The Government does not refute Cohan's allegations that settlement negotiations with the Government did occur, but rather explains the reason the Government filed for default – Cohan's failure to provide requested financial statements. The Government thus contends that only after Cohan's repeated failure to return the financial forms did the Government move to default. Moreover, once default was entered, the Government moved to extend the deadline for seeking default judgment for one month "for Cohan's benefit." Doc. #16, p. 2.

In sum, the Government acknowledges that settlement negotiations took place but refutes Cohan's version of the facts surrounding both the negotiations and entry of default. The Government broadly concludes that Cohan's motion for leave is "without justification" and "would unduly delay this case and would prejudice the government."[3] *Id.* The Government, however, fails

[3] In opposition to defendant's present motion, the Government cites cases regarding amendment of the pleadings under Fed. R. Civ. P. 15(a), as opposed to amendment of the scheduling order under Fed. R. Civ. P. 16(b). *See, e.g., Rivkin v. Diversified Realty Group Partners*, No. 86CIV.9048 (CSH), 1989 WL 79378, *4 (S.D.N.Y. July 11, 1989) and *Messier v. Southbury Training School*, No. 3:94–CV–1706 (EBB), 1999 WL 20907, *4 (D. Conn. Jan. 5, 1999). The Second Circuit has addressed the relationship between the standards to be applied in each instance, specifying that "despite the standard of the second sentence of Rule 15(a),[ *i.e.*, "freely given when justice so requires," a district court], does not abuse its discretion in denying leave to amend the pleadings where the moving party has failed to establish good cause, as required by Rule 16(b), to amend the pleadings after the deadline set in the scheduling order." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir.2007) (discussing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir.2000)). "[W]ith respect to the Rule 16(b) standard, " 'good cause' depends on the diligence of the moving party." *Kassner*, 496 F.3d at 243 (quoting *Parker*, 204 F.3d at 340).

In both Rule 15(a) and Rule 16(b) cases, district courts have examined such factors as the length of delay, the motive or fault of the dilatory party, and the potential prejudice to the opposing party arising from the delay. With respect to the pending motion, the Rule 16(b) "good cause" standard governs. However, to the extent that the Rule 15(a) cases also discuss factors which may be relevant under the Rule 16(b) "good cause" standard, such cases may be persuasive.

to specify any particular prejudice it will likely suffer.

From the conflicting descriptions of the settlement negotiations between the parties, the Court is left with the undisputed fact that some negotiations took place, these negotiations failed, and the Government moved for default. Regardless of the actual skirmishing that may have occurred between the parties, it is clear that the parties' intervening discussions may have contributed to delay in these proceedings and thus possible delay in discovery.

With respect to delay, courts have held that settlement negotiations may constitute "good cause" for amending a scheduling order. *See, e.g.*, *Enzymotec Ltd.,* 754 F.Supp.2d at 537 (finding "good cause" to amend scheduling order where "the parties spent several months after the [relevant] deadline involved in settlement negotiations that ultimately concluded in an unsuccessful mediation"). Furthermore, even if this Court fails to credit Cohan's assertion that the Government's conduct contributed to the delay (*i.e.*, that AUSA Sciarrino induced him not to act with respect to his lawsuit while settlement negotiations were pending), the ongoing discussions between the parties were naturally Cohan's focus while they occurred.

In any event and more importantly, Cohan alleges that the Government provided him with responses to his September 6, 2011 discovery requests on December 5, 2011, almost two months after the expiration of the filing period for his motion, October 16, 2011. Doc. #33, ¶3(g). According to Cohan, the Government's responses, in addition to his own legal research, formed the basis of his belief that "the entry of summary judgment in his favor is fully warranted and completely appropriate." *Id.,* ¶3(h). Under these circumstances, there is "good cause" to amend the case schedule in that Cohan could not, even with diligence, have met the seven-month filing deadline in

October of 2011.[4]

The Court next examines Cohan's behavior as the moving party to determine whether he has purposely delayed, or had a dilatory motive with respect to, the proceedings. Here, in considering whether "good cause" supports amendment of the scheduling order, there is no indication from the facts presented that Cohan purposely delayed or acted in "bad faith" with respect to the discovery responses or his proposed cross summary judgment motion. In assessing the type of delay Cohan has perpetrated herein, the Court finds that such delay was "silent and unobtrusive rather than vexatious and burdensome." *Brown*, 356 F. App'x at 487. The Second Circuit has found that a lack of ill motive or obstructiveness "tends to favor" movants such as Cohan. *Id.* (finding no "bad faith" where the defendant "simply did not make submissions required by the court instead of swamp[ing] the court with irrelevant or obstructionist filings").

On the other side of the balance, with respect to prejudice to the non-moving party, the Government has made no claim that Cohan's proposed motion will introduce new issues for discovery. On summary judgment, the Court analyzes the undisputed facts already discovered to determine whether the moving party is entitled to judgment as a matter of law. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court show "that there is no genuine dispute as to any material fact and the movant is entitled

---

[4] Even if Cohan failed to produce his financial statements in time to stave off the Government's default motion, there is no evidence that his basis for filing a summary judgment motion was apparent to him until after receiving the Government's discovery responses in December 2011. The Government does not refute Cohan's allegations regarding his date of receipt of these responses.

to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R .Civ. P. 56(a). Because the facts forming the basis for Cohan's proposed motion have already been provided by the Government in discovery responses, discovery for purposes of this motion should be complete.

In further evaluating "good cause" and in the interests of justice, the Court also considers judicial efficiency in ruling on cross summary judgment motions together, thereby possibly alleviating the need for trial. In so doing, the Court expresses no opinion as to the merits of either party's summary judgment motion, but simply notes that it may be more efficient to adjudicate the motions simultaneously.

However, even were the Court to conclude that defendant's cross summary judgment motion might delay the judicial process, the Court takes into account Cohan's due process right to defend himself in the case in suit.[5] In the absence of any particular prejudice to the opposing party, "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Brown*, 356 F. App'x at 487 (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir.1996)).

Lastly, the Court is mindful of its general duty "to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing, *inter alia, Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the appropriate degree of special solicitude is not identical with regard to all *pro se* litigants, and where, as here, the [*pro se* party] is an attorney representing himself, he ordinarily receives no such solicitude at all." *Stern v. Regency Towers,*

[5] *Richards v. Jefferson County, Ala.,* 517 U.S. 793, 797 n.4 (1996) ("The opportunity to be heard is an essential requisite of due process of law in judicial proceedings.") (citations omitted); *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)("The fundamental requisite of due process of law is the opportunity to be heard.").

*LLC*, No. 11 Civ. 8824(JMF), __F.Supp.2d__, 2012 WL3264363, at *5 (S.D.N.Y. Aug. 10, 2012) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir.2010)). *See also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82 n. 4 (2d Cir. 2001) (noting that *pro se* attorneys typically "cannot claim the special consideration which the courts customarily grant to *pro se* parties") (internal quotation marks and citation omitted). In sum, "[i]t is well settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required." *Fenner v. City of New York.*, No. 08–CV–2355 (BMC)(LB), 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009).

Nonetheless, given the "good cause" proffered by Cohan, the Court need not exercise any special leniency to find that Cohan should not be precluded from filing his summary judgment motion. Therefore, even though it would have been prudent of Cohan to move "for an extension of time to preserve his opportunity to file a dispositive motion," Doc. #37, p.2, the Court will not bar his filing of a summary judgment motion based on such procedural deficiency.

In sum, in light of Cohan's proffered "good cause" for delay, and in the absence of substantial prejudice to the Government from this delay, the Court shall permit defendant to file his proposed summary judgment motion.

## III. <u>CONCLUSION</u>

Accordingly, defendant Cohan's Motion for Leave to File Cross Motion for Summary Judgment (Doc. #33) is GRANTED. He shall file and serve his summary judgment motion and supporting memorandum on or before October 31, 2012 . The Government shall, is so advised, file its memorandum in opposition within twenty-one (21) days of the filing of defendant's motion. D.

Conn. L. Civ. R. 7(a)(1).  Defendant shall thereafter file his reply, if any, within fourteen (14) days of the filing of the Government's responsive brief.  *Id*. 7(d).

       It is SO ORDERED.

Dated: New Haven, Connecticut
       October 5, 2012

                                            */s/Charles S. Haight, Jr.*
                                            Charles S. Haight, Jr.
                                            Senior United States District Judge